IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIE MERRELL, :
    Plaintiff :
:
vs.                      CIVIL NO. 1:CV-09-1093
:
R. M. LAWLER, et al., :
    Defendants :

*M E M O R A N D U M*

I. *Introduction*

The pro se plaintiff, Willie Merrell, an inmate at SCI-Huntingdon, filed this civil-rights action alleging an Eighth Amendment claim for the lack of heat in his cell, a due process claim for denial of parole, and a First Amendment claim to allow his attendance at chapel services. He also alleged three retaliation claims. He named the following defendants: R.M. Lawler, Huntingdon's superintendent; Mr. J. Keller, Plaintiff's unit manager who then became a program manager at Huntingdon; Mr. A. Lovett, a counselor at Huntingdon; Jill J. Spyker, a psychological services specialist at Huntingdon; Connie Green, the grievance coordinator at Huntingdon; Lawrence F. Murray, an agent for the Pennsylvania Board of Probation and Parole; Dorina Varner, the chief grievance officer for the Pennsylvania Department of Corrections (DOC); and Jeffrey A. Beard, the secretary of the DOC.

We are currently considering the defendants' motion to dismiss the amended complaint.

II.  *Procedural History*

We granted Plaintiff leave to proceed in forma pauperis and examined his original complaint for legal sufficiency under 28 U.S.C. § 1915(e)(2)(B). Upon an initial screening, *see Merrell v. Lawler*, 2009 WL 1810978 (M.D. Pa. June 24, 2009), we dismissed without leave to amend the claim against Green, any claim based solely upon supervisory liability, and any damages claim for conduct of family members toward an inheritance. We also dismissed the three retaliation claims and the claim against defendant Varner but allowed Plaintiff an opportunity to amend these claims. We did permit the denial-of-parole claim, the Eighth Amendment claim, and the First Amendment free-exercise claim to proceed on this initial screening.

In response to our order, on July 2, 2009, Plaintiff filed an amended complaint, noting that we had ordered the "clarif[ication] of certain" claims from the original complaint, (doc. 10, first page), and then going on to amend those claims. We ordered service of the original and amended complaints. Under Fed. R. Civ. P. 12(b)(6), the defendants moved to dismiss. On October 19, 2009, Plaintiff moved to file another amended complaint, seeking to add a retaliation claim against new defendants for events occurring after the events alleged in the original and amended complaints.[1]

III.  *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

---

[1] We deal with Plaintiff's motion separately.

entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

The requirement of making factual allegations extends to averments of conspiracy. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009)(per curiam). *See also Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 175 (3d Cir. 2007)(nonprecedential)(a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action). "'This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible.'" *Id.* (quoting *Lynn v. Christner*, 184 Fed. Appx. 180, 185 (3d Cir. 2006)(per curiam)(nonprecedential)); *Kost v. Dep't of Public Welfare*, No. 07-2404, 2009 WL 466166, at *4 (E.D. Pa. Feb. 24, 2009).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, *supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11. Second, we "determine

3

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

IV.     *Background*

This background is taken from the original and amended complaints. Plaintiff makes the following claims.[2]

      A.     *Eighth Amendment Claim for Lack of Heat in Plaintiff's Cell*

Plaintiff alleges an Eighth Amendment claim based on the lack of heat in his cell, ultimately resulting in a back injury. He avers that while he was an inmate at SCI-Greene, the prison administrators there decided he had to be in a prison that had heat in his cell because of a back injury he suffered in a 1993 DOC van accident. (Original Compl. ¶¶ 13-16). Plaintiff was transferred to SCI-Huntingdon (in 2006, *id.* ¶ 62) but was placed on BA-Block, a block with opened windows, no ventilation, and radiators with no heat. (*Id.* ¶ 18). Further, Plaintiff's cell was on the bottom tier, where the cold air collected. Huntingdon did have F-Block, which was a block with bottom, single cells for inmates with Plaintiff's back condition, but that option was ignored. (*Id.* ¶ 21).

In 2007, Plaintiff filed a grievance seeking a transfer to another prison. (Am. Compl. Part V ¶ 1). Defendants Keller and Lovett and "other administrators" supported Plaintiff verbally and in writing and said they would transfer Plaintiff if "medical"

---

[2] Generally, an amended complaint takes the place of the original complaint, but here Plaintiff used the amended complaint to clarify the claims we decided needed amendment, so he did not intend the amended complaint to supersede the original. Hence we will refer to relevant allegations from the original complaint as well as those made in the amended complaint. *See Payne v. DeLuca*, 433 F. Supp. 2d 547, 606 n.62 (W.D. Pa. 2006)("an amended complaint supersedes the original complaint in its entirety unless the amended complaint specifically refers to or adopts the original"). We also note that we did not order Plaintiff to file an amended complaint that could stand on its own, as we sometimes do.

4

recommended it.  (*Id.* ¶ 3).  The medical department did support Plaintiff's need to be in a prison that provided heat to his back and body and wrote reports and made phone calls to the defendants in support.  (Original Compl. ¶ 41).  The BA-Block unit team, including Lovett, told Plaintiff he would be transferred, either to SCI-Graterford or SCI-Dallas, after he was seen by the Parole Board.  (Original Compl. ¶¶ 22 and 23; Am. Compl. Part V ¶ 7).  Defendant Keller similarly told Plaintiff when he was Plaintiff's unit manager that if "medical" supported Plaintiff for a medical transfer, he would transfer Plaintiff.  (Original Compl. ¶ 32).

Plaintiff was not transferred.  He alleges that Lovett and Keller "and others" breached their agreement to transfer him because, as set forth below, he was denied parole and because he had not completed the sex offender program.  (Original Compl. ¶ 30; Am. Compl. 11).  Defendant Lovett refused to clarify for the other defendants that the medical department supported the transfer to either Graterford or Dallas.  (Original Compl. ¶ 33).

On March 20, 2009, Plaintiff's back gave out on him "due to the freezing conditions" on BA-Block.  (Original Compl. ¶ 42).  He collapsed on the floor and had to be helped into bed until he was taken to the medical department in the morning, (*id.* ¶ 43 and 44), where they acknowledged that his injury was due to a lack of heat.  (*Id.* ¶ 45).  "Every Defendant" knew about, and had "involvement in" this deprivation of an "'identifiable human need.'"  (Am. Compl. Part V ¶ 21).

B.  *Due Process Claim for Denial of Parole*

Plaintiff makes a due process claim for denial of parole.  Plaintiff had a sex-offense conviction and was in a sex-offender group while he was incarcerated at SCI-Greene, but Plaintiff had served all of his time on the sex offense, had "maxed out" on it, as he put it.  (Original Compl. ¶ 25).  As a result, Plaintiff believed there was no longer

5

any need for him to participate in a sex offender program. (*Id.*). Defendant Spyker, the psychological services specialist at Huntingdon, ran the program. (Original Compl. ¶¶ 5 and 24). He showed her the proof that he should not be in the program. (Am. Compl. Part V ¶ 4). However, she insisted that Plaintiff participate in the group at Huntingdon, and discuss his sex offense, (Original Compl. ¶ 26), but did tell him he could leave the group and get back into the class at his next prison. (*Id.* ¶ 27). However, Spyker then prepared a false report stating that Plaintiff had quit the group and had been uncooperative. (*Id.* ¶ 28). Spyker sent this report to the Parole Board and Plaintiff's unit team. (*Id.*). Because of this report, the Board denied parole, using the program as the reason for the denial, even though defendant Murray, a Board agent, knew Plaintiff had maxed out his sentence on that offense. (*Id.* ¶¶ 29 and 31).[3] Defendant Lovett had refused to clarify for the other defendants that Plaintiff had "maxed out" on his sex offense. (*Id.* ¶ 33).

### C. *First Amendment Free-Exercise Claim for Lack of Access to the Chapel*

Plaintiff makes a First Amendment claim for denial of the right to practice his religion. Plaintiff alleges Huntingdon's chapel is on the fourth tier of B-Block. (Am. Compl. Part IV, third paragraph). Plaintiff is unable to attend chapel because he is a first-tier medical prisoner based on his back injury. (Original Compl. ¶¶ 48 and 49). Plaintiff cannot walk the steps up to the fourth tier, (*id.* ¶ 49), and "[a]ll other prisons have religious services on the ground level, and have alternative settings for prisoners that cannot climb steps." (*Id.* ¶ 51). "Talks with . . . Keller and Lawler by inmate representatives ended in denial of all alternatives." (Am. Compl. Part IV, fifth paragraph, CM/ECF p. 5).

---

[3] Two Board "Notices" are attached to the amended complaint, indicating that the Board denied parole on October 28, 2006, and November 18, 2008. Both notices indicated other reasons why parole was denied but also stated that completion of a sex offender program would be a consideration in future decisions whether to grant parole. (Doc. 10, CM/ECF pp. 47-51).

D.   *The Retaliation Claim*

Plaintiff alleges he was subjected to retaliation because he "confronted" Spyker and "[spoke] up" to her about his right not to have to participate in a sex offender program.[4]  He was also subjected to retaliation after he filed grievances on unspecified dates starting in 2007 "challenging all the defendants (Spyker, Lovett, Keller, Varner, Murray, Lawler [and] Beard." (Am. Compl. Part V ¶¶ 12 and 22). "Defendants began retaliating by covering records, falsifying reports lying and refusing to correct the record." (*Id.* ¶ 13).  They also retaliated by subjecting him to the Eighth Amendment violation of a cold cell that eventually led to his injury (*id.* ¶¶ 19 and 22), and denying him a medical transfer.  (*Id.* ¶ 20).  Plaintiff alleges that retaliation is proven by the fact that the defendants had agreed to transfer him, but breached that agreement after he started to file grievances. (*Id.* ¶ 24).

E.   *Allegations of Personal Involvement by Specific Defendants*

As to Varner's involvement,[5] Plaintiff alleges that she was Huntingdon's grievance coordinator in 2007 when he filed his grievance about the heat in his cell. (*Id.* ¶ 1). She assigned his complaint to Keller, at the time Plaintiff's unit manager, leading to Keller and Lovett's agreement that he would be transferred if the medical department recommended it. (Id. ¶¶ 2-3, 25). Varner "became part of the conspiracy by rubber stamping all the final grievances, though it was clear Plaintiff was not in prison for rape, and

---

[4] Plaintiff calls his right not to have to participate in the sex offender program as his right against double jeopardy, apparently because he believes that participation is a second punishment for his sex offense.

[5] We specifically required Plaintiff to amend his allegations against Varner to provide more detail about his liability.

7

that the doctor recommended transfer." (*Id.* ¶ 17). After Varner became the chief grievance officer for the DOC, and "false reports and incorrect facts reached her office," she should have straightened out the matter but instead "rubber stamp[ed]" the defendants' responses to Plaintiff's grievances. (*Id.* ¶ 25; doc. 10, Final Appeal decisions, attached as exhibits to the amended complaint, CM/ECF pp. 35 and 41).

In his original complaint, Plaintiff alleges Beard, the DOC secretary, visited the prison on January 23, 2009, and Plaintiff spoke with him and showed him his paperwork. (*Id.* ¶ 38). Secretary Beard "promised to correct the matter and have [Plaintiff] transferred," (*id.* ¶ 39), but "never acted on his word, or on the paperwork . . . ." (*Id.* ¶ 40). Plaintiff also alleges that Lawler was informed of what was happening "yet acted in conspiracy with his subordinates to deny Plaintiff[']s medical and incentive based transfer . . . ." (*Id.* ¶ 37).

V.   *Discussion*

      A.   *Plaintiff States a Valid Eighth Amendment*
          *Medical Claim for Lack of Heat in His Cell*

Treating the Eighth Amendment claim as one for conditions of confinement, Defendants move to dismiss the claim on the basis that a conditions-of-confinement claim is only valid when there has been a deprivation "'of the minimal civilized measure of life's necessities.'" *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 417-18 (3d Cir. 2000). Defendants argue that the plaintiff's claim does not meet this standard as it is based merely on his cell being "colder than the rest of the housing unit." (Doc. 19, Defs.' supporting brief at p. 9).

We reject this argument. Plaintiff's claim is really an Eighth Amendment medical claim. As such, he states a claim if he avers that prison officials: (1) acted with

8

deliberate indifference (2) in exposing him "to a sufficiently substantial risk of serious damage to his future health." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)(quoted cases and internal quotation marks omitted). Plaintiff's averments satisfy this requirement. He avers that he was transferred to Huntingdon from Greene specifically because the prison administrators at Greene decided he had to be in a prison that had heat in his cell because of his previous back injury. However, Plaintiff was placed on BA-Block, where the cold air collected, even though Huntingdon had F-Block, which could have met his health requirements. Further, his request for a medical transfer was supported by the medical department, but Keller and Lovett did not transfer him. Eventually, on March 20, 2009, Plaintiff's back gave out on him "due to the freezing conditions" on BA-Block. He was taken to the medical department, where they acknowledged that his injury was due to a lack of heat.

We think these averments state a claim against Beard, the DOC secretary; Lawler, Huntingdon's superintendent; Keller; and Lovett, at least at the pleading stage. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Keller and Lovett may have had that involvement based on their participation in the transfer request. Secretary Beard and Superintendent Lawler may also have had sufficient personal involvement. Plaintiff alleges that Beard visited the prison on January 23, 2009, about two months before Plaintiff was injured, and Plaintiff spoke with him. Beard said he would have Plaintiff transferred. Plaintiff alleges that Lawler was informed of what was happening about the cell conditions yet acted with his subordinates to deny Plaintiff a medical and incentive-based transfer. Personal involvement on the part of a supervisory official in the chain of command may be shown by his knowledge of and acquiescence in an ongoing constitutional violation. *See*

*Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003); *Lee v. Ericson*, No. 05-0068, 2006 WL 581198, at *5 (M.D. Pa. Mar. 8, 2006).

We see no sufficient allegation of the involvement of any other defendant in this claim. Plaintiff does allege that "[e]very Defendant" knew about, and had "involvement in" this deprivation of an "'identifiable human need.'" (Am. Compl. Part V ¶ 21). However, this allegation is deficient because it is conclusory; as noted, Plaintiff has to provide sufficient factual specificity.

B. *Plaintiff Fails to State a Claim for Denial of Parole As He Has No Liberty Interest in Parole*

Plaintiff makes a due process claim for denial of parole on the reasoning that the prison could not require him to participate in the sex offender program since he had already served all of his time on his sex offense. As relief, Plaintiff seeks compensatory and punitive damages and the amended complaint adds a request for injunctive relief that he be released on parole.

The defendants move to dismiss this claim because Plaintiff has no liberty interest in parole. We agree with the defendants. We note that this claim must also be dismissed under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because Plaintiff has no civil-rights claim for damages arising from denial of parole until he has had the parole decision overturned in an appropriate proceeding.

We begin with the *Heck* decision. In that case, the Supreme Court ruled that a section 1983 claim for damages arising from a criminal conviction does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination,

or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 114 S.Ct. at 2372 (footnote omitted).

*Heck* has been extended to the parole context. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006)(applying *Heck* in dismissing a section 1983 challenge to a parole-revocation decision); *Baines v. Powell*, No. 08-252, 2009 WL 811894, at *4 (M.D. Pa. Mar. 26, 2009)(Caldwell, J.)(*Heck* bars a *Bivens* action seeking damages for denial of parole when the action would call into question the validity of the denial); *Randolph v. New Jersey State Parole Office*, No. 07-376, 2007 WL 1521189, at *4 (D.N.J. May 21, 2007)(*Heck* bars a section 1983 claim seeking injunctive relief against denial of parole that has not been overturned through a habeas proceeding or some other appropriate action); *Schafer v. Moore*, 46 F.3d 43 (8th Cir. 1995)(parole denial).

Plaintiff's section 1983 action calls into question the validity of the denial of his parole, and Plaintiff has not successfully challenged that denial in other proceedings, such as in a petition under 28 U.S.C. § 2254. Accordingly, in light of *Heck*, Plaintiff has failed to state a cause of action for denial of parole.

Plaintiff's claim also fails in any event because, as the defendants argue, Petitioner has no federal constitutional right to release on parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Nor does he have any right based on Pennsylvania law to parole release. *See Weaver v. Pennsylvania Bd. of Prob. & Parole*, 688 A.2d 766, 770 (Pa. Commw. 1997)(under Pennsylvania law, parole is a favor, and the prisoner has no protected liberty interest in being released before a legitimately imposed sentence has expired). *See also Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996)(parole is not a constitutionally protected liberty interest under Pennsylvania law); *Rauso v. Vaughn*,

11

79 F. Supp. 2d 550, 552 (E.D. Pa. 2000); *Rogers v. Pa. Bd. of Prob. & Parole*, 555 Pa. 285, 724 A.2d 319 (1999). This means that Pennsylvania could require Plaintiff to attend a sex offender program while he is serving a sentence on one offense even though he has already served all his time on his sex offense. *Carter v. Muller*, 45 F. Supp. 2d 453, 456-57 (E.D. Pa. 1999). As the court stated in *Carter*, the Board's reliance on the failure to participate in a sex offender program as a reason to deny parole is not unconstitutional in these circumstances as this reliance is "entirely consistent with the Parole Board's duty to 'procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections and environment' of the prospective parolee." *Id.* at 457 (quoting 61 P.S. § 331.19).

We will therefore dismiss the claim for denial of parole. In doing so, we will dismiss defendants Spyker and Murray from this action as they are the defendants with the most direct involvement with the parole decision and Plaintiff has failed to make sufficient factual allegations against them for any other claim.

   C. *The Retaliation Claim*

The defendants argue that the amended complaint's retaliation claim is deficient because it makes a conclusional assertion that all the "[d]efendants began retaliating by covering records, falsifying reports lying and refusing to correct the record." (Am. Compl. Part V ¶ 13). We agree. Further, "falsifying reports" is a reference to Spyker's report to the Board, which we have already rejected as a basis for a claim in discussing Plaintiff's claim for denial of parole. The retaliation claim will proceed solely on the bases that defendants allegedly retaliated by subjecting Plaintiff to the cold conditions of his cell and by denying him a transfer.

12

### D. *Varner's Involvement*

In response to our order requiring additional allegations against Varner, Plaintiff alleges in his amended complaint that Varner was Huntingdon's grievance coordinator in 2007 when he filed his grievance about the heat in his cell. (*Id.* ¶ 1). She assigned his complaint to Keller, at the time Plaintiff's unit manager, leading to Keller and Lovett's agreement that he would be transferred if the medical department recommended it. (Id. ¶¶ 2-3, 25). Varner "became part of the conspiracy by rubber stamping all the final grievances, though it was clear Plaintiff was not in prison for rape, and that the doctor recommended transfer." (*Id.* ¶ 17). After Varner became the chief grievance officer for the DOC, and "false reports and incorrect facts reached her office," she should have straightened out the matter but instead "rubber stamp[ed]" the defendants' responses to Plaintiff's grievances. (*Id.* ¶ 25).

These allegations are insufficient to impose any liability on Varner. Varner was not in the chain of command. *Compare Atkinson*, *supra*, 316 F.3d at 270. She was instead a grievance officer, and Plaintiff is essentially complaining that she reached the wrong result on his grievances. This fails to state a claim because prisoners do not have a constitutional right to prison grievance procedures. *See Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (3d Cir. 2007)(per curiam)(nonprecedential)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)). Therefore, Plaintiff cannot impose liability on Varner for her role in denying his administrative grievances or appeals. The allegation of conspiracy does not save the claim against Varner because it is conclusory. *See Capogrosso, supra,* 588 F.3d at 184. Varner will therefore be dismissed from this action.

D. *The Free-Exercise Claim Is Deficient in Failing to Allege the Personal Involvement of Any Defendant*

The defendants argue the First Amendment free-exercise claim fails because Plaintiff does not allege that any defendant was personally involved in the denial of his rights. We agree. We acknowledge that as part of this claim, Plaintiff alleges that "[t]alks with . . . Keller and Lawler by inmate representatives ended in denial of all alternatives." (Am. Compl. Part IV, fifth paragraph, CM/ECF p. 5). But in context this allegation does not focus on any attempt by Plaintiff himself to use the fourth-tier chapel, only attempts by others who may have had similar difficulties using the chapel. Before this claim proceeds, Plaintiff should name the defendant(s), if any, who obstructed his ability to use the chapel or attend religious services. We will grant leave to file an amended complaint on this claim if he can do so.

VI. *Conclusion*

Based on the foregoing, the following claims are still in the case: the Eighth Amendment claim for lack of heat in Plaintiff's cell and only against defendants Beard, Lawler, Keller and Lovett; and (2) the retaliation claim set forth in the amended complaint. The due process claim for denial of parole will be dismissed, and Plaintiff will be granted leave to file an amended complaint on his First Amendment claim naming defendants who had personal involvement in his unsuccessful attempts to attend chapel services. Defendants Spyker, Murray and Varner will be dismissed from this action as to all claims.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 15, 2010

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIE MERRELL, :
    Plaintiff :
:
    vs. : CIVIL NO. 1:CV-09-1093
:
R. M. LAWLER, et al., :
    Defendants :

*O R D E R*

AND NOW, this 15th day of January, 2010, it is ordered that Defendants' motion to dismiss (doc. 17) is granted as follows:

    1. Plaintiff's due process claim for denial of parole is hereby dismissed.

    2. Plaintiff is granted twenty-one (21) days from the date of this order to file an amended complaint on the First Amendment free-exercise claim naming defendants who had personal involvement in his unsuccessful attempts to attend chapel or religious services. If he fails to do so, the First Amendment claim will be dismissed.

    3. All claims against defendants Spyker, Murray and Varner are hereby dismissed, and these defendants are dismissed from this action.

    4. In all other respects, the motion is denied.

                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge